## COMMISSIONER OF INTERNAL REVENUE v. DASHIELL.
### No. 6678.

Circuit Court of Appeals, Seventh Circuit.
Dec. 22, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to the Atty. Gen., for petitioner.

Henry O. Harriman, of Washington, D. C. (Bert C. Bentley, of Chicago, Ill., and Theodore B. Benson, of Washington, D. C., of counsel), for respondent.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This cause comes to this Court on petition by the Commissioner of Internal Revenue for review of a decision of the United States Board of Tax Appeals which held that the respondent had sustained a

deductible loss during the year 1931 as a result of the sale of certain stock owned by him. It is the contention of petitioner that the loss sustained by the respondent occurred in the year 1932.

The pertinent facts as found by the Board of Tax Appeals are as follows: On December 30, 1931, the taxpayer, who was in Florida on that date, was the owner of 500 shares of Vanadium stock which he had purchased on March 30, 1931, at a cost of $36,662.50. The certificates for these shares were in a safety deposit box in Chicago. The taxpayer telephoned to his broker in Chicago on December 30, 1931, and instructed him to sell for him the 500 shares of stock. He and the broker agreed that he would deliver the shares upon his return to Chicago in January, 1932. The Chicago broker sold the 500 shares of Vanadium for the taxpayer through a New York broker on the New York Stock Exchange on December 31, 1931, for $6,417.-50. On that date the New York broker delivered certificates for 500 shares to the purchaser. The shares which were thus delivered to the purchaser were in the possession of the New York broker and were loaned by him for the purpose of consummating the sale in accordance with the rules of the New York Exchange. The New York broker on December 31, 1931, credited the proceeds of the sale and charged the 500 shares to the Chicago broker. On the same date the Chicago broker credited the proceeds of the sale and charged the 500 shares to the taxpayer. The taxpayer delivered his certificates for 500 shares of Vanadium to his broker on January 30, 1932.

The taxpayer deducted his loss of $30,-245 on his return for 1931. The Commissioner disallowed the claimed loss on the theory that the transaction was a short sale and was not closed until the delivery of the certificates in 1932. The Board of Tax Appeals held that the sale was a cash sale with immediate delivery by an agent of the taxpayer and that the case was ruled by an earlier decision of the Board.[1]

It is not questioned that the transaction was intended by the taxpayer to be a good faith sale of 500 shares of stock which had been purchased by the taxpayer on March 30, 1931. These shares were represented by stock certificates of 100 shares each, numbered respectively 58795-6-7-8-9. The taxpayer had purchased the 500 shares rep-resented by the foregoing certificates from the broker who handled the transaction involved in this case; and when the taxpayer delivered the certificates to close the transaction in the instant case he returned the same certificates that he had received from the broker in connection with his purchase of March 30, 1931. At the time the taxpayer directed his broker to sell the 500 shares there were certificates for 1,500 additional shares of Vanadium stock in the safety deposit box with the certificates for the 500 shares. The taxpayer testified that he intended his broker to sell "the ones which I first acquired, which is customary;" and further testified that it was his policy to deliver the certificates of stock first acquired whenever he had more certificates than were involved in any particular sale.

The taxpayer delivered the certificates to his broker on January 30, 1932, and his broker forwarded them to the New York broker. The taxpayer's Chicago broker testified that the entire transaction was handled the same as it would have been handled if the taxpayer had delivered the certificates for the shares to the broker on December 30, 1931, except that the Chicago broker would not have charged the taxpayer's account with the 500 shares, and the certificates for the taxpayer's shares would have been mailed to the New York broker on the second business day.

We agree with the conclusions of the Board of Tax Appeals that the transaction was not intended to be, and did not constitute, a short sale within the practice of the New York Stock Exchange; and in our opinion the interested parties treated the transaction as "a cash sale with immediate delivery by an agent of the seller." The parties intended the sale to be consummated on December 31, 1931, and as a practical matter it was consummated on that date, although the transaction relating to the sale was not fully completed until the taxpayer's certificates of stock were delivered to the New York broker early in the year 1932. When the New York broker, acting under the instructions of the taxpayer, sold the shares to the New York purchaser as a cash sale and delivered "loaned" certificates for 500 shares to the New York purchaser, the shares thus delivered being substituted for the shares of the taxpayer, and thereafter credited the cash received for the shares to the tax-

---

[1] Dee Furey Mott v. Commissioner, 35 B.T.A. 195.

payer's Chicago broker, the New York broker became, as between himself and the taxpayer, the owner of 500 shares of the taxpayer's Vanadium stock and was entitled to a delivery of the same. The taxpayer had lost his legal right to retain the 500 shares of stock by reason of his acceptance, through his Chicago broker, of payment for the same, regardless of actual delivery of the certificates of the taxpayer, and regardless of the question of the passing of legal title to the shares. The transaction was so far advanced in December, 1931, "that the petitioner [taxpayer] was bound to deliver the stock to the broker at a price which was then determined by the sale the broker made. That sufficed to make the loss certain and established the amount." [2]

It may be true, as asserted by petitioner, that the taxpayer in the instant case by violation of the legal obligation which had been created before the end of December, 1931, could have avoided delivering the stock which he had authorized his broker to sell. But on December 31, 1931, the loss had become certain and ascertainable in amount, both in fact and in law. Furthermore, we are at liberty to consider, and should consider, that the transaction relating to the sale was in fact carried out and that the shares in question were actually delivered to the New York broker.

It was pointed out in United States v. S. S. White Dental Manufacturing Company[3] that the statute contemplates deduction of losses "which are fixed by identifiable events, such as the sale of property, * * * or caused by its destruction or physical injury * * * or, in the case of debts, by the occurrence of such events as prevent their collection." An "identifiable event" must bear such a relation to the claimed loss that it definitely settles and determines the existence, and the amount, of such loss, even though the identifiable event may not have a strict causal relation to the loss. "To secure a deduction, the statute requires that an actual loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed; in other words, he has that much less than before."[4]

A sale of property is generally a most satisfactory "identifiable event" not because the sale causes the loss, but because it is conclusive proof that a loss has been realized, if the sale is bona fide and is an isolated transaction.[5] Also, the terms of the sale furnish a basis for fixing the amount of the loss. If a sale furnishes conclusive evidence that a loss has been sustained in a particular taxable year, it is not material to the establishing of the right to deduction that all the technical details of the transaction relating to the sale be consummated within the taxable year. If the taxpayer in the instant case had refused to deliver the certificates of stock to his broker and had settled with him by paying the sale price of the stock, the taxpayer doubtless could not make out a case for deduction. But his failure to make out a case for deduction would not result from the fact that there had not been a sale of his stock, but from the fact that such sale would have been only a part of a more general transaction which, when completed, had left the taxpayer's financial position unaffected by the stock transaction; and as a result there would have been no loss sustained. Such a situation would fall within the doctrine of Shoenberg v. Commissioner, supra, as aptly described in the opinion of that case: "This is true because the taxpayer has not actually changed his position and is no poorer than before the sale. The particular sale may be real, but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities, and no loss is deductible which is not real."

The sale transaction in the instant case was not completed until after the close of the taxable year 1931, yet as among the parties interested, sufficient acts had been performed to divest the taxpayer of all equitable interest in the 500 shares and to entitle the New York broker to receive the legal title to these shares; also, the sale by the New York broker had determined the existence of and fixed the amount of the loss of the taxpayer as of December 31, 1931. From and after December 31, 1931, the taxpayer was not legally free to do any act in respect to the 500 shares, which he had authorized his broker to sell, which would destroy the legal conse-

[2] Ruml v. Commissioner of Internal Revenue, 2 Cir., 83 F.2d 257, 258.

[3] 274 U.S. 398, 47 S.Ct. 598, 600, 71 L.Ed. 1120.

[4] Shoenberg v. Commissioner of Internal Revenue, 8 Cir., 77 F.2d 446, 449.

[5] Shoenberg v. Commissioner, supra.

628

quences of the acts performed on and prior to December 31, 1931.

We agree with the statement of the Circuit Court of Appeals for the Second Circuit in Ruml v. Commissioner, supra, that when the evidence of realization of a loss is a sale of personal property it is not always necessary for the property to be delivered before there may be a loss sustained. As stated in the opinion in that case, "It is enough that the obligation to deliver is so fixed that the loss is reasonably certain in fact and ascertainable in amount."

The decision of the United States Board of Tax Appeals is affirmed.