OPINION. Harron, Judge: The principal issue in this proceeding is whether petitioner is entitled, under section 23 (f), to deduct from income a loss allegedly suffered by it from the sale of land and buildings which were used in its trade or business. Respondent has also disallowed certain expenses incurred by petitioner incident to the sale. The deductibility of these expenses from the gross sales price is admitted by both parties to be dependent upon the decision of the primary issue. It is respondent's position that the sale of the property was not a bona fide arm’s length transaction, but, instead, that it was a “pure sham” conceived solely for the purpose of effecting a tax saving. Examination of the evidence in this proceeding, however, fails to sustain respondent’s contention.[2] Much of the record m this proceeding is made up of expert testimony as to the fair market value as of the date of sale of the land and buildings sold by petitioner. But, it is not necessary to our decision to determine the fair market value of the property. As respondent says in his brief, the valuation of the land and buildings is important only to the extent that a showing of the fair market value may reveal the unreality of the sale. We are convinced, from an examination of all the evidence, however, that petitioner in good faith believed that the price at which it sold the land and buildings represented a fair valuation of the property. But the reason for the calling of the expert witnesses should be pointed out. Petitioner sought expert advice prior to entering into the transaction and desired to present to the Court testimony of the two independent real estate brokers and appraisers which it had consulted prior to selling the property. The first of these, William E. Malm, appraised the fair market value of the land and buildings to be $68,000, based on the income potentialities which a study of the rental values of comparable properties indicated joint use of the land and the improvements thereon might be expected to produce. The other appraiser, Raymond T. Cragin, informed petitioner that the estimated fair market value of the property as of the time of sale was $60,000, based on a study of the selling price of comparable properties in Cleveland. Respondent called expert witnesses to demonstrate his theory that the sale to Meisel was not a bona fide arm’s length transaction, to rebut, if not impeach, the expert witnesses ■whom petitioner relied upon prior to the transaction and who testified in the proceeding. Careful consideration has been given to the opinions expressed by all the expert witnesses and the factors which each took into consideration. The testimony of the chief expert witness called by respondent, who appraised the fair market value of the property to be $132,760, was impressive, and much consideration has been given to it. We think, however, that there is a reason for the discrepancy between the testimony of petitioner’s experts and respondent’s experts as to the estimated fair market value of the property. The different experts did not consider the same comparable properties and transactions in arriving at fair rental and sales value. We believe that the sounder choice of comparable properties was made by petitioner’s experts. Petitioner’s witnesses also used as their basis for comparison properties with which, for the most part, they had actually dealt. On the other hand, respondent’s experts, for the most part, had no personal acquaintance with the properties upon which they relied; they used as a basis for comparison transactions which they secured from examination of courthouse records, rather than properties with which they had actually dealt. However, we are not called upon and do not make a finding of fact as to the fair market value of the subject property on the date of sale. The issue in this proceeding is limited to whether petitioner sustained a loss upon the resale of the land and buildings to Meisel. Respondent determined that there was no loss and attacked the whole transaction as a sham. But after careful consideration of the testimony of all the witnesses and of the facts before us and in particular the terms of the sale and lease-back with Meisel, we conclude that the sale was a bona fide business transaction. There is no evidence that any relationship or agreement between petitioner and Meisel existed, other than that of buyer and seller. Meisel had no connection with petitioner. The transaction was entered into at arm’s length and resulted in the absolute transfer of the fee in the property to Meisel. He was secured as a purchaser by the independent real estate brokers who had been hired by petitioner to effect a sale of the property, and the ■sale was made only after extensive negotiations between Meisel and petitioner. Although we think it necessary to regard the sale to Meisel and the lease-back as one interrelated transaction, it is only reasonable to believe that the provisions of the lease which provided for the investment by the purchaser of the property of up to $50,000 in improving the property was an important factor in arriving at the consideration to be paid by the purchaser. The lease-back provisions of the sales agreement provided also for retention of possession by petitioner for one year at a rental of $500 per month.. And petitioner was granted the right, exercisable within six months, to lease the premises for a term of 24 years at an annual rental of $6,000, plus certain expenses. But there was neither a repurchase option nor a renewal option present in the agreement. The lease was for a term of less than 30 years, and, therefore', was not the equivalent of a fee under the terms of section 29.112 (b) (1)-1 of Regulations 111. It cannot be said that petitioner retained substantially all the rights it had in the property before the transaction was consummated. Any loss which it suffered in the sale of the land and buildings, therefore, is deductible from its income. Respondent, however, contends that petitioner suffered no actual loss from the sale of the property. In support of this argument, respondent cites Shoenberg v. Commissioner, 77 Fed. (2d) 446, affirming 30 B. T. A. 659, and Chicago Title & Trust Company, Executor, 32 B. T. A. 249. Both of those cases, however, involved transactions between the taxpayer and corporations dominated by the taxpayer or her -husband, in which securities were sold at a loss and then substantially similar securities were purchased from one of the dominated corporations. In those cases the claimed loss was disallowed on the ground that there had been no change in the taxpayer’s position, that he was no poorer after the transactions than before. But those cases are not analogous to the instant proceeding. Petitioner had no control over Meisel, and petitioner materially changed its position as a result of the transaction. Before the sale, it was the owner in fee simple of the land and the buildings. After the sale, Meisel was the owner of the property, and petitioner was entitled merely to temporary possession of the property for one year, with the option to lease the premises for a 24-year term, in exchange for a rental of $500 per month plus certain expenses. Respondent stresses the fact that petitioner’s cash position is benefited by the sale if a deduction for the claimed loss is allowed because a reduction of its tax liability serves to conserve its cash. This argument has been considered. Petitioner, admittedly, considered the tax consequences of the transaction. However, a taxpayer may give consideration to the tax consequences of transactions. See United States v. Cumberland Public Service Co., 338 U. S. 451, and Commissioner v. Hale, 67 Fed. (2d) 561. It has been found as a fact that the sale was a bona fide one, consummated at arm’s length. In addition, petitioner has shown that it had other business purposes in making the sale. It was desirous of expanding its physical facilities, either by moving to a larger plant, or, if no suitable property could be found, by building an addition to the plant which it was occupying. As part of the sale agreement, the purchaser agreed that if petitioner decided to exercise its option to lease the property it would pay one-half the cost of any additions made by petitioner up to an expenditure of $50,000 by it. If such improvements were made, petitioner agreed to pay as additional rent a sum equal to 8y2 per cent of the cost borne by the lessor. Petitioner actively tried to secure other and more suitable quarters after the sale. When this search proved unsuccessful, petitioner exercised its option to lease back the property which it had sold, at an annual net rental of $6,000 plus certain expenses, for 24 years. The petitioner has proved, in our opinion, that the rental agreed upon was a fair rental for the property. It is held that petitioner is entitled to deduct from income the difference between the amount which it realized on the sale and the basis of the property sold. Also, petitioner is entitled to deduct $2,852, the expenses of the sale, from the gross selling price in computing the net amount realized from the sale. Decision will be entered under Rule 50. Petitioner also argues, in the alternative, that it is entitled to a part of the deduction in question as an ordinary and necessary business expense under section 23 (a) (1) (A) by reason of the purchase of the land from The Cleveland Trust Company which it alleges was made in order to relieve itself of a burdensome lease, and that it is entitled to the balance of the deduction as a loss from the sale of property used in its trade or business other than a capital asset. In view of our decision upholding petitioner’s principal argument it is not necessary to decide the alternative contention.