WISCONSIN ELECTRIC POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31274.   Promulgated May 23, 1952.

*John G. Quale, Esq.*, and *Martin R. Paulsen, Esq.*, for the petitioner.
*Gerald W. Brooks, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner concedes that the petitioner eventually realized a loss on the disposition of its right-of-way lands through the chain of events which started with the "transaction" in 1942 and he does not question the amount of the loss. His contention is that there was no sale in 1942 and the "transaction * * * was not such a definite and conclusive event as to give rise to a deductible loss in 1942."

The two sales made by the petitioner in 1942 were, perhaps, unusual in some respect but they were bona fide sales made at arm's length between unrelated parties. Title passed permanently from the petitioner for a stated fixed price in those sales. Neither party could retract. There was no hedge or equivocation attached. The purchasers were required to pay the price of $32,000. The time of payment was somewhat uncertain but not the amount. Complete payment was required not later than one year after the railway line should be abandoned. Abandonment was inevitable and was only delayed temporarily by the war. The fact and the amount of the loss were definitely and unchangeably fixed by the sales in 1942. Thereafter a change in the value of the property could not affect the petitioner or change the amount of its loss. The petitioner properly claimed its loss in 1942 when it accrued the unpaid but adequately secured portions of the purchase price and charged off as a loss the excess

of its remaining basis over the purchase price. It could not properly postpone its deduction until the balance of the purchase price was due or was paid. The sales were the events identifying the loss. Cf. *Commissioner* v. *Dashiell*, 100 F. 2d 625, affirming 36 B. T. A. 313.

The Commissioner reasons that the transaction should be considered as a whole and he calls attention to several circumstances related in one way or another to the sales which, he contends, show that the petitioner did not change its position with respect to the land in 1942 and prevent the loss from being actually realized for income tax purposes in that year. The petitioner could not give clear title to the property sold until it was released from the mortgage, as the Commissioner points out. Of course, property can be sold subject to a mortgage, but these parties intended that the lands should be released from the mortgage and only omitted that act through inadvertance. The error was promptly corrected when brought to the attention of the petitioner. That error did not nullify the sale or prevent realization of the loss in 1942. Cf. *Commissioner* v. *Dashiell, supra.* Obviously, the loss did not occur when the error was corrected in 1944. The purchasers had had a taxable transaction of their own by that time from their subsequent sale of the same lands.

The denial of Railway's application to abandon its line in no way prevented the petitioner from selling its interest in the land subject to the lease. The Commissioner is in error in thinking that the petitioner could not sell the land, subject to the lease, to outside parties without first obtaining permission from the Wisconsin Public Service Commission. The sale was valid and effective in all respects under the laws of Wisconsin.

The petitioner and Memmel knew in 1942 that Racine County might like to buy the A and B tracts in that County after the line was abandoned and they, as contracting parties, provided that the County should have an option to purchase those lands at that time, at a price which would give Memmel a profit. He was satisfied, as his purchase shows. However, the fact that the County might purchase from Memmel in no way affected or postponed the petitioner's realization of loss on its sale to Memmel. The sale by the petitioner was not held open by and the amount of the purchase price was not dependent upon the option. The Commissioner refers to the option as if it had some significance but he fails to demonstrate how it would delay realization of loss by the petitioner or when and under what circumstances it would lead to the deduction. Neither the exercise nor the lapsing of that option would be an identifiable event fixing the loss of the petitioner on its sale made years before.

There was no option with respect to the lands sold to Henry W. Marx Company.

The Commissioner says that possession is important in deciding when a sale is consummated for tax purposes. It would be where the property was not under lease but not in this case which does not differ in that respect from the usual case in which property is sold subject to a continuing lease. The purchasers bought with full knowledge that the lease would continue until abandonment of the line was permitted. There is no rule that gain or loss upon a sale of leased property can not be realized and reported until the lease terminates. The seller might be out of existence by that time.

The Commissioner mentions that the petitioner retained the right to the rentals until the lease was terminated by abandonment and that Railway was to pay the taxes, but he does not show how those facts would affect the right to the deduction claimed. Both parties seem to agree that the petitioner would have to report the rentals as income and the Commissioner does not argue that they decreased the petitioner's loss from the sales of the leased property. Taxes are assessed in the name of the company operating a public utility in Wisconsin, Wisconsin Statutes, chapter 76, section 76.03. Furthermore, the petitioner, after the sale, was no longer owner of the lands.

The Commissioner waited until his reply brief to say when he thought the admitted loss would be deductible. He there states: "Under the procedure adopted by the petitioner, the loss was not realized in 1942; it was put off until the indefinite future when the road should be abandoned, an event which actually occurred in 1947." The purchasers from the petitioner had sold all of the Tract C lands and had paid all of the purchase price due the petitioner for those lands long before that, yet the Commissioner argues that the petitioner's sale of those lands was not a closed transaction for income tax purposes until another taxpayer was permitted in 1947 to abandon an electric railway line on other lands sold by the petitioner in 1942. That argument is not convincing. The balance of the purchase price for the A and B tracts did not become due upon abandonment of the transportation line and that event did not "identify" the petitioner's loss from the prior sale of those lands. A temporary restriction as to the use of lands does not prevent their sale subject to the restriction. The Wisconsin Board of Tax Appeals allowed the petitioner a deduction for 1942 representing its loss on all of the land sold in that year. The cases which the Commissioner cites involved sales with an offsetting hedge, *Shoenberg* v. *Commissioner*, 77 F. 2d 446, affirming 30 B. T. A. 659, certiorari denied 296 U. S. 586, or sales which were still conditional, incomplete, or subject to some vital uncertainty in the early year and for some such reason were held not closed transactions establishing loss in that year, *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11. Those cases are not contra to the holding here.

*Decision will be entered under Rule 50.*