I. J. and Ilene J. WAGNER,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 74–1642.

United States Court of Appeals,
Tenth Circuit.

Submitted March 25, 1975.

Decided June 26, 1975.

J. Jay Bullock of Bullock & Clark, Salt Lake City, Utah, for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jonathan S. Cohen and Carolyn R. Just, Attys., Tax Div., Dept. of Justice, for respondent-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

I. J. and Ilene J. Wagner appeal from a decision of the United States Tax Court upholding the Commissioner's determination of income tax deficiencies for the years 1969 and 1970. 33 T.C.M. 201. Ilene J. Wagner is a party solely by having filed joint income tax returns for 1969 and 1970 with her husband, I. J.

Wagner. The deficiencies relate to the disallowance of depreciation deductions taken by Wagner as his share of the total depreciation claimed on property owned by a partnership, in which he had an interest.

National City Lines, Inc. owned some improved real property in Salt Lake City, Utah (the Trolley Square property). National City had leased the entire property to the Salt Lake City Lines for the period of August 31, 1968, to August 31, 1970. Early in 1969 Wagner learned that the Trolley Square property was being offered for sale for $675,000.00. Subsequent negotiations resulted in a real estate contract executed June 26, 1969, providing for the sale by National City of the Trolley Square property to Wagner and a co-purchaser, C. Taylor Burton, for $610,000.00. Other pertinent provisions of the contract were:

1. Seller would retain all rent under the existing lease from the contract date, June 26, 1969, to the expiration of the lease, August 31, 1973. (This rent would amount to about $48,000.00.)

2. Seller would pay the taxes and insurance on the property until August 31, 1970, when the lease would terminate. (This would amount to about $24,000.00.)

3. Wagner and Burton, as Buyers, would obtain possession on termination of the lease.

4. Wagner and Burton did not have to pay interest on the unpaid purchase price until termination of the lease. (Interest from June 26, 1969, to August 31, 1970, would be about $54,000.00.)

5. The contract expressly provided that the property was purchased in its condition as of June 26, 1969. The sale was subject to the existing lease, which provided that Salt Lake City Lines would return the property in as good a condition as when leased, less normal wear and tear.

6. Twenty Thousand Dollars ($20,000.00) was paid on execution of the contract, and $80,000.00 paid 90 days thereafter. The contract provided for $51,000.00 to be paid on the anniversary of the contract for four years and the balance in six years.

A warranty deed to the property was executed November 24, 1969, and placed in escrow pending payment of the purchase price. The co-purchasers including Wagner, the taxpayer, established the Trolley Square partnership. Each partner contributed his interest in the Trolley Square property as his capital contribution to the partnership.

Wagner deducted his proportionate share of the depreciation on the Trolley Square property for the period from June 26, 1969, to August 31, 1970, on his income tax returns for 1969 and 1970. Int.Rev.Code of 1954, §§ 167, 702(a)(8). The deduction was disallowed by the Commissioner, and the ruling was upheld by the Tax Court.

The Tax Court concluded that Wagner and the co-purchasers had agreed to purchase the Trolley Square property in its depreciated condition as of August 31, 1970, the end of the lease. The Tax Court thus held that Wagner had no depreciable interest in the property prior to September 1, 1970. The court relied on the decision in Fox River Paper Co. v. Commissioner, 28 B.T.A. 1184, to sustain its conclusion. Alternatively, the court said that the fact that Wagner did not have possession of the property prior to September 1, 1970, means that he did not "own" the property and thus is not entitled to the depreciation deduction, citing Gordon J. Harmston, 61 T.C. 216. The taxpayers appealed.

On appeal, Wagner argues that the *Fox River* case is distinguishable and not controlling; possession is not essential for him to deduct depreciation; he acquired the burdens and benefits of ownership June 26, 1969, and thus had a depreciable economic interest.

■ Decisions of the Tax Court are reviewable by this court in the same manner as decisions of a United States District Court sitting without a jury.

Findings of fact made by the Tax Court will not be disturbed on review unless found to be clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226; Ruidoso Racing Association, Inc. v. Commissioner, 476 F.2d 502 (10th Cir.); Snider v. Commissioner, 453 F.2d 188 (5th Cir.); Rosenberg v. Commissioner, 450 F.2d 529 (10th Cir.); Int.Rev.Code of 1954, § 7482. It is clear that once the Commissioner ruled on the claimed deduction, the burden is on Wagner to establish that the ruling is wrong. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

The necessary inquiry here is to determine when the sale was complete for tax purposes, or when "ownership" of the Trolley Square property passed to Wagner. The test used is whether the "benefits and burdens" of ownership passed to Wagner on June 26, 1969. This test is applied in connection with several sections of the Internal Revenue Code in situations involving holding periods of assets, reporting of gain or loss on a sale, nonrecognition of gain provisions, as well as depreciation. See Dettmers v. Commissioner, 430 F.2d 1019 (6th Cir.); Ted F. Merrill, 40 T.C. 66, aff'd 336 F.2d 771 (9th Cir.); Rev.Rul. 68–89, 1969–1 Cum. Bull. 59; Rev.Rul. 54–607, 1954–2 Cum. Bull. 177.

Where property is sold subject to an existing lease, the buyer need not have possession of the property in order to be able to take a depreciation deduction. Wisconsin Electric Power Co. v. Commissioner, 18 T.C. 400. A taxpayer need not have actual, legal title to property before he can claim depreciation of the property as a deduction. Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226; Hunter v. Commissioner, 46 T.C. 477; Moses Lake Homes, Inc. v. Commissioner, 23 T.C.M. 1756. The fact that the property here was sold subject to an existing lease will not act to make the sale incomplete for our purposes. Wisconsin Electric Power Co. v. Commissioner, 18 T.C. 400; May

Department Stores Co. v. Commissioner, 16 T.C. 547; Standard Envelope Manufacturing Co. v. Commissioner, 15 T.C. 41. The test is best applied on a case-by-case basis, considering the total transaction involved. Commissioner v. Baertschi, 412 F.2d 494 (6th Cir.); Gordon J. Harmston, 61 T.C. 216.

The Tax Court held that this case should be governed by Fox River Paper Co. v. Commissioner, 28 B.T.A. 1184. There the Fox River Paper Company entered into an agreement on June 8, 1920, to purchase a paper mill from Kimberly-Clark. A down payment was made in June, with the balance of the price to be paid in annual installments beginning January 1, 1921. Kimberly-Clark would continue to use the mill itself until January 1, 1921, although Fox River could begin to make improvements before that time. A clause in the Fox River purchase agreement provided:

"The Seller shall maintain the property in good operating condition and in as good condition as the same now is, until the first day of January, 1921, *excepting ordinary wear and tear and decay.*" (emphasis added)

The court concluded, based on the facts in that particular situation, that Fox River had purchased the mill in its depreciated condition as of January 1, 1921. Fox River was thus denied a depreciation deduction on the mill for the period from June 8, 1920, to January 1, 1921.

Wagner contends that *Fox River* is distinguishable from the instant case. The real estate contract of June 26, 1969, in the case before us, specifically provides that the property is purchased in its condition as of June 26, 1969. Further, the property sold here is subject to an existing lease, which was not the case in *Fox River*. It is true that the lease here contains a clause that the property will be returned in its original condition, less ordinary wear and tear, but Wagner argues that this is a standard clause in all leases, and cannot be used to change the meaning of the real estate contract.

Wagner also argues that the rule in *Fox River* has been changed by Fribourg

Navigation Co., Inc. v. Commissioner, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751. This argument appears to grow out of language used by the Tax Court in its opinion in the case before us in referring to "economic loss."

The court in *Fribourg* discussed depreciation as an accounting concept, "a process of estimated allocation which does not take account of fluctuations in valuation through market appreciation." 383 U.S. at 277, 86 S.Ct. at 865. Fribourg Navigation Co. had purchased a ship which it was depreciating on a straight line method over a useful life of three years. The adjusted basis of the ship as of January 1, 1957, was $326,627.73. Due to market conditions, Fribourg was able to sell the ship in June of 1957 for $695,500.00. The Commissioner denied Fribourg a depreciation deduction on the ship for the first six months of 1957, arguing that since the sale price exceeded the adjusted basis as of January 1, the ship "cost" Fribourg nothing in 1957. The court rejected this argument, allowing the deduction. Wagner interprets *Fribourg* to mean that an actual *economic loss* is not a prerequisite to a deduction for depreciation.

The Tax Court determined that Wagner shrewdly bargained to obtain a $30,000.00 "savings" by postponing interest payments and shifting liability for taxes and insurance until August 31, 1970, and obtained a reduction in the original asking price from $675,000.00 to $610,000.00. In return he traded the rent from the lease, and agreed to accept the property in its depreciated condition as of August 31, 1970. However, the record shows that the total purchase price was agreed on and then the tradeouts on taxes, insurance, and rents was negotiated, and the whole put in the contract. However, it would seem to serve no useful purpose to make an analysis of the negotiations because the question is a legal one as to the consequences of the agreement. The Tax Court dissected the negotiations, and compared the rents, the taxes and insurance and found that the taxpayer

had received a "financial benefit" or an "additional cash saving" of about $30,000.00 in the tradeout on these items. The Tax Court referred to the $30,000.00 "saving" and said:

> "The financial benefits realized by petitioner and his co-purchasers pursuant to the terms of the real estate contract were not the product of either inadvertent or poorly-conceived planning; to the contrary, they were produced by shrewd, calculated bargaining on the part of petitioner and his co-purchasers. Accordingly, we have concluded that the unrebutted strong inference of the facts in the instant record is that petitioner and his co-purchasers consciously intended to purchase the Trolley Square property in its *depreciated condition* as of August 31, 1970 (i. e., the date of the projected expiration of the Salt Lake City Lines lease). Therefore, we hold that petitioner did not sustain any economic loss from the depreciation of the Trolley Square property during the time period from June 26, 1969, through August 31, 1970, and that petitioner, thus, is not properly entitled to a depreciation deduction with respect to the Trolley Square property for this time period."

The reference in the above quotation to the "shrewd" bargaining, and the "financial benefits" realized, followed by the "Accordingly, we have concluded . . . that petitioner . . . intended to purchase the Trolley Square property in its depreciated condition as of August 31, 1970. . . . ." leaves the impression of a lack of connection between the "accordingly" and the shrewd bargaining. The contract provided that the condition of the property was to be as of the contract date, and there is no evidence whatever to the contrary. The bargaining as to the taxes, insurance and rents was a dollar bargaining on price. The Tax Court in evaluating the bargain and the "financial benefits" of the bargain departed from the applicable standards and entered into the dollar or value anal-

ysis prohibited by Fribourg Navigation Co., 383 U.S. 272, 86 S.Ct. 862.

It did not make any difference whether the taxpayer made a good bargain with the seller, whether he received "financial benefits" of $30,000.00 in the tradeout, or whether he received any dollar loss when the $30,000.00 is compared to the remaining term on the lease. The Tax Court appears to hold that the $30,000.00 represented in some way "depreciation" or deferred possession. As mentioned above, the contract expressly provides, contrary to the Fox River case, that the buyer accepts the property in the condition it was as of the date of the contract. The balancing of taxes, insurance and rent is not the "economic loss" referred to in the determination of authorities.

■ The fact that property was purchased subject to a lease, the fact an installment purchase was made, the fact that the deed was in escrow, that the seller paid the taxes and insurance, each separately make no difference as to the entitlement to depreciation, nor do they make a difference collectively. The taxes-insurance-rent trade was no more than a dollar exchange, and did not alter the legal elements of "ownership." The contract of sale was unconditional, the possession date was controlled by the pre-existing lease and was not negotiable between buyer and seller.

Thus, the cases cited above as to "ownership" and the "benefits and burdens" of ownership are applicable. The ownership for depreciation purposes was in the taxpayer as the necessary legal elements were present. This is sufficient regardless of the dollar bargain or the dollar consequences. The Fribourg case (383 U.S. 272, 86 S.Ct. 862) is clear on such an "economic loss" as a dollar loss and it was error for the Tax Court to apply a dollar loss test. To do so is to apply the same theory as the value change in Fribourg.

The decision is reversed and remanded as to the point appealed (depreciable in-terest in the real estate) as considered above. The cross-appeal of the Commissioner has heretofore been dismissed.