## MARSTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 171.

Circuit Court of Appeals, Second Circuit. March 4, 1935.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Charles T. Cowenhoven, Jr., and H. Maurice Fridlund, both of New York City, of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and James W. Morris, Sewall Key, and John MacC. Hudson, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

In his income tax for the year 1928, the petitioner deducted a loss due to the sale of stocks. The Commissioner disallowed this deduction and was sustained by the Board of Tax Appeals.

In 1923, the petitioner acquired 11,000 shares of preferred stock and 22,000 shares no par common stock of Moose Mountain, Limited, an Ontario corporation, owning iron ore lands in Ontario. This was an un-

listed stock, closely held, and was worth par or above prior to 1928. In 1927 high-grade iron ore fields were discovered, and the low-grade ore fields of the Moose Mountain, Limited, lost their commercial utility and the shares dropped accordingly. In 1928, it was testified, these high-grade ore fields had a life of 25 or 50 years, and this company's ore lands were accordingly affected.

In 1925, at a cost of $110,000, the petitioner purchased 3,300 shares of stock of the Cumberland Coal Products Corporation, a Virginia corporation. This stock was unlisted and closely held. It was organized to operate a plant in a bituminous coal field. In 1926 an improved process for bituminous coal distillation was discovered, and the Cumberland Corporation's plant was sold for scrap in 1927.

The petitioner made efforts to sell his Moose Mountain stock at private sale in 1928, also the Cumberland stock, and could find no market. He thereupon sold it at public auction, through a well-known New York City auctioneer, after advertisement of its sale made in New York City newspapers.

The petitioner was a trustee of the Jennie C. H. Marston Trust, and instructed the trust's brokers to enter fixed bids of $1,000 for the Moose Mountain stock and $1,500 for the Cumberland stock on behalf of the trust. It was an inter vivos trust created by petitioner's deceased wife in 1923, under which he was one of the two life beneficiaries and his three children were the remaindermen. Counsel for the trustee advised that the petitioner had the legal right to sell and the trustee to purchase after obtaining consent of all the beneficiaries. His children at this time were 30, 31, and 44 years, respectively. The books and accounts of the trust were kept separate and distinct from the petitioner's personal affairs. The trust became the purchaser at the sale. These were the only sales of the respective stocks in 1928. The trust paid for its purchases by check drawn on the trust account to the broker's order to cover the purchase price plus broker's fees, and, after receipt of the stock, it was deposited in the trust safe deposit box. Deductions for selling commission and for the transfer stamp tax were made by the auctioneers, and the check for the balance delivered to the petitioner, namely, $654.75 for the Moose Mountain stock and $1,156.75 for the Cumberland

stock. There was testimony that the petitioner had no intention of reacquiring these stocks at the time of sale. In July, 1929, the petitioner purchased the Moose Mountain stock at the same price the trust paid for it and delivered it to his partner to satisfy an obligation to him. He said that of course he would "reimburse the trust for any sum that Mr. Blair (his partner) might ultimately realize on the sale of the Moose Mountain stock." The Cumberland stock was never repurchased by the petitioner. It continued to be held by the trust until the time of the dissolution of that corporation in 1931, when the trust realized a profit of about $3,000.

These facts we think justify the petitioner's claim of a legal sale and the right to deduct the loss sustained in his income tax for 1928. Jones v. Helvering, 63 App. D. C. 204; 71 F.(2d) 214; Helvering v. Gregory (C. C. A.) 69 F.(2d) 809. The Revenue Act of 1928, § 23 (USCA tit. 26, c. 24, § 2023), allows, in computation of net income, deductions from gross income for loss sustained during the taxable year and not compensated for by insurance or otherwise. There was an actual loss sustained; there is no evidence to contradict this contention of the petitioner. The Board seems to have inferred, for an insufficient reason, that it was not an actual sale or loss. Sufficient reason is advanced for the depreciation in value of the stock, which the petitioner publicly sold after advertisement through an auctioneer, and the trust became the purchaser. It may not be said that this petitioner is in fact the trust. If the trust on resale made a profit on its purchase, it would have to account therefor in its return. Nor is there any evidence to justify the argument that there was some agreement to repurchase. It was a bona fide sale, and the relation of the petitioner to the trust does not affect the legality of the sale. The trust was a separate taxable entity and could bid and purchase at the auction as might any other stranger. Busch v. Commissioner (C. C. A.) 50 F.(2d) 800, 802; Calloway v. Commissioner, 18 B. T. A. 1059; Foster v. Commissioner, 22 B. T. A. 717; Terry v. United States, 10 F. Supp. 183; District of Connecticut, October 31, 1934; Hartford-Connecticut Trust Co. v. United States, 10 F. Supp. 179, District of Connecticut, October 31, 1934 (Hincks, J.).

The decision of the Board of Tax Appeals is reversed.