SHOENBERG v. COMMISSIONER OF INTERNAL REVENUE.

No. 10079.

Circuit Court of Appeals, Eighth Circuit.

April 19, 1935.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

James W. Beller, of Washington, D. C., for petitioner.

Lucius A. Buck, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and James W. Morris, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is a petition to review a redetermination of the income taxes of petitioner for the year 1930. The matter in issue concerning these taxes is the refusal of the Commissioner (affirmed by the Board of Tax Appeals) to permit a deduction of $191,886.30 claimed by petitioner to represent a loss occurring in that year through the sale of certain corporate stocks.

There is no dispute as to the facts here involved, though there is disagreement as to some essential inferences to be drawn therefrom. The evidence clearly shows the following: In 1929 and 1930, petitioner purchased "300 shares of Lehman Corporation, 1,000 shares of Texas Corporation, 565 shares of Chase National Bank, 2,352 shares of National Dairy Products, 466 shares of Liquid Carbonic, 1,061 shares of Electric Bond & Share Company, 1,000 shares of Irving Trust Company," for which he had paid a total price of $502,383.17. He owned all of these shares on December 5, 1930.

After consultation with an accountant and with the purpose of showing a taxable deduction, he instructed a stock broker, upon the above date, to sell all of these shares on the New York Stock Exchange at current prices. At the same time he instructed the same broker to purchase the same number of shares in the same companies upon the above exchange for the Globe Investment Company. Under the above instructions, on December 5th, the broker sold and bought the shares in the National Dairy Products, Liquid Carbonic, Electric Bond & Share Company, and Irving Trust Company; on December 10th, the shares of the Texas Corporation and Chase National Bank, and on December 22d, the shares in the Lehman Corporation. Eliminating the commissions of the broker, the price at which the stock of petitioner was sold and the price at which the same stock was bought for the Globe Investment Company was exactly the same amount, both as to total ($311,752.50) and also as to items. At various times in January and February, following, and upon dates which narrowly exceeded thirty days after the sale and purchase transactions above, petitioner bought from the Globe Investment Company the shares it had purchased as above, paying therefor the then market price on the day of purchase by him in a total sum of $304,-593.87.

The Globe Investment Company was a corporation wherein petitioner owned over 70 per cent. of the capital stock and his mother, a widow, owned the balance. Something more than a year before the above transactions he had been empowered by the directors of the company to act very broadly with reference to buying and selling for the company, and petitioner testified that "since his father's death, nine years previously, he had had the exclusive handling of the affairs of the company, and that it was his practice for years to enter into transactions for the company."

He did not consult with his mother about the above transactions.

He further testified, as follows:

"That he had asked his accountants whether or not it would be proper for him to sell the stock for the purpose of registering a loss, so that he could take a deduction in his income tax return, and they told him he could sell it through a broker. Upon being asked whether or not he had discussed with his accountants the question of whether or not it would be better to sell this stock

on the open market, or whether it would be proper for him to sell it to the Globe Investment Company which he controlled, he replied that at the time he sold these stocks, the Globe Investment Company had sufficient funds of its own on hand to go in the open market and buy securities; that he was familiar with these stocks, and it was at a time when the market conditions were rather unsatisfactory and uncertain; that he considered the purchase by the Globe Investment Company of these stocks would at that time be perfectly proper for the investment of its money, and in taking a loss he would receive sufficient funds to enter into other financial investments. He testified further that he asked his accountants if it would be perfectly proper for the Globe Investment Company to buy stocks like those he sold, and was advised that it would be proper; that there would be no objection to the Globe Investment Company purchasing the stocks on the open market.

"In response to a question as to whether or not he had loaned any money, or had repaid any money to the Globe Investment Company just prior to December 5th, the witness stated that he had not loaned the company any money, but that he had repaid them between $110,000.00 and $120,000.00; that he did not think this amount, plus the amount the Globe Investment Company had on hand, was substantially the amount which the company paid to the broker for these stocks; that it was a part of the amount which they approximately had on hand; that he presumed they needed some money, but whether or not it was approximately the amount he repaid he did not recall. Upon being asked again as to whether or not he had discussed with his accountants the question of reacquiring the securities from the Globe Investment Company, the witness stated that he had not done so at the time he sold this stock; that, as he recalled it, he discussed the matter of taking a deductible tax loss for the year 1930 with his accountants in regard to the selling of these securities, and subsequently he asked the accountants whether it would be perfectly proper for the Globe Investment Company to make the purchase of like securities, and the accountants stated it was perfectly proper for it to do so. Witness stated that he recalled having a conversation with his accountants regarding his right to buy those securities from the Globe Investment Company, but that he was unable to recall the exact date when it occurred. Witness stat-

ed that he had not discussed the sale of these securities by the Globe Investment Company in January, 1931, with any of the directors of that company; that during his supervision of the company for many years, he was empowered to handle its financial transactions to the best of his ability. He stated that there was neither much loss nor gain to the Globe Investment Company in the purchase and sale of this stock."

The question to be answered is whether, in view of the entire situation and transactions above set forth, petitioner is entitled to a deduction for a loss sustained by the sale of his stock.

■ The Revenue Act here involved (Act of 1928, 45 Stat. 791, 26 USCA § 2001 et seq.) as well as earlier and later Revenue Acts permit deductions of losses from taxable net income. It requires such losses to be "realized" by some closed and completed "identifiable event" (United States v. S. S. White Dental Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120) which definitely settles and determines the existence of and the amount of such loss (Burnet v. Huff, 288 U. S. 156, 161, 53 S. Ct. 330, 77 L. Ed. 670; Weiss v. Wiener, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720; United States v. S. S. White Dental Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120), and it requires such losses to be actual and real (Gregory v. Helvering, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. ——; Burnet v. Huff, 288 U. S. 156, 161, 53 S. Ct. 330, 77 L. Ed. 670; United States v. Flannery, 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865; McCaughn v. Ludington, 268 U. S. 106, 45 S. Ct. 423, 69 L. Ed. 868).

■ Among the "transactions" or "identifiable events" which may operate to realize and fix a loss, the most commonly occurring is a sale of the property. Here there was an actual sale of these shares, and, if our examination must stop with that sale, this loss is conclusively shown. The questions here are whether we can consider the entire situation which comprehends this sale, the purchase by the Globe Investment Company and the sale by it to the taxpayer; and, if we can, the effect thereof upon the above loss as being a deductible loss.

It would seem there could be no doubt of the propriety of examining all matters, relating to the sale by the taxpayer, which bear upon the deductible character of the loss shown by that sale. There are many cases involving deductions from federal income taxes wherein the entire transaction

on account of which the deduction was claimed have been examined. The most recent case in the Supreme Court is Gregory v. Helvering, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. ——, where a deduction was sought under the "plan of reorganization" provision of the Act of 1928 (section 112 (g) and (i), 26 USCA § 2112 (g) and (i). There a new and entirely valid corporation had been created for the sole purpose of attempting to take advantage of the section. The court did not feel that it was stopped by the mere regularity of the proceeding and their apparently strict conformity with the statute, but it looked through the form to the substance and held the device ineffective.

■ The place of a sale in claiming a deduction is as evidence that a loss has been realized. If the sale is real and is an isolated transaction, it is conclusive proof. If it is only part of an entire plan, then the entire plan is examined to ascertain whether its effect is to produce a loss or a realized loss. It is immaterial that the motive prompting the sale or the plan of which the sale was a part was to secure a deduction. The matter of interest is whether an actual loss has been realized. Tax laws deal with realities [Helvering v. Security Savings & Commercial Bank, 72 F.(2d) 874 (C. C. A. 4); MacQueen & Co. v. Comm., 67 F.(2d) 857 (C. C. A. 3)], and look at the entire transaction [cases just cited and Ahles Realty Corp. v. Comm., 71 F.(2d) 150 (C. C. A. 2)]. Two very recent cases [Commissioner v. Dyer,[1] 74 F.(2d) 685, and Marston v. Comm., 75 F. (2d) 936], in the Second Circuit, taken together, reveal the rule as to sales and repurchases. In the Dyer Case, there were sales and repurchases both parts of an original entire plan, and the claimed deductions were denied. In the Marston Case there was a sale with no intention or plan to repurchase, but there was a later repurchase, and the claimed deduction on account of the sale was allowed.

■ To secure a deduction, the statute requires that an actual loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed; in other words, he has that much less than before.

■ A loss as to particular property is usually realized by a sale thereof for less than it

cost. However, where such sale is made as part of a plan whereby substantially identical property is to be reacquired and that plan is carried out, the realization of loss is not genuine and substantial; it is not real. This is true because the taxpayer has not actually changed his position and is no poorer than before the sale. The particular sale may be real, but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities, and no loss is deductible which is not real.

■ Examining this entire transaction, it is clear that this sale by taxpayer was merely part of a plan by which he hoped to create a tax deductible loss without any real change in his position. At the times he directed the broker to sell particular stocks, he also gave instructions to purchase identical stocks for the Globe Investment Company. Just over the thirty-day period of the statute, he purchased these same stocks from the Globe. He had complete dominion over the Globe as to such purchase by it, as to its retention of the stock for resale to him and as to such sale by it to him. For all practical purposes, he used the Globe as an agency for purchasing, holding, and selling to him, stocks identical with those he sold to establish the claimed loss. That these actions by the Globe and his use of the Globe was a part of the plan which included sale by him is clear. The plan was an entirety and existed at the time of the sale by him. It was fully carried through. He was no poorer when the plan was executed than he had been before the sales by him, except for the brokerage commissions. He suffered no real loss, but solely a paper one which could be shown only by considering one part of an entire plan and transaction. The entire plan was devised for the purpose of showing such loss. Its results must be judged as an entirety.

■ It is argued that the Investment Company and the taxpayer are separate entities and must be considered so here. Granting that they were, the domination of the company by the taxpayer was complete and in this transaction it was no more, in effect and substance, than his alter ego. Also it is urged that the statute (Section 118, 26 USCA § 2118), allows repurchase after thirty days, and these repurchases were beyond that time. This statutory provision was en-

---

[1] The Dyer Case is expressly followed in Commissioner v. Clarence G. Troup, 75 F.(2d) 1010 (C. C. A. 7). Also see Atkins v. Commissioner, 76 F.(2d) 387 (C. C. A. 5) and Slayton v. Commissioner, 76 F.(2d) 497 (C. C. A. 1).

acted to meet a situation of tax avoidance which had grown up whereby securities were sold at the end of a tax year to secure a deductible loss and were repurchased within a day or so after the beginning of the next tax year. Where such sales and purchases were part of one plan, they were ineffective to produce deductible losses, but there remained the difficulty of proving that they were parts of one plan—more correctly of meeting proof by the taxpayer that they were not. This provision met that situation to the extent that repurchases within thirty days of sale were ineffective, but it was far from validating repurchases after thirty days even where such were part of an original plan involving the sale made the basis of the claimed loss.

The determination of the Board is affirmed.