## UNITED STATES v. HUNTINGTON LABORATORIES, Inc.

No. 5552.

Circuit Court of Appeals, Seventh Circuit.

March 2, 1936.

Frank J. Wideman, Asst. Atty. Gen., James W. Morris, Sewall Key, and Lucius A. Buck, Sp. Assts. to the Atty. Gen., and James R. Fleming, U. S. Atty., of Fort Wayne, Ind., for the United States.

Frank M. Hogan, of Fort Wayne, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The Commissioner of Internal Revenue levied against appellee an assessment for additional income taxes for the year 1927. Appellee paid the additional tax under protest; sued to recover, and obtained judgment in the District Court. This appeal followed.

The parties stipulated as to the facts. Appellee, in 1919, purchased from one West certain formulæ for $100,000, paying therefor by shares of its own capital stock. West agreed to act as manager for the corporation and not to resell the stock. The formulæ were placed in a safety de-

posit box rented by the president of appellee, and the latter paid the rental. The box could be opened only in the presence of West and two directors and then only with the consent of the board of directors. The formulæ remained locked in the box until 1928. Previous to that time, nobody in the appellee's employ saw or became aware in any way of the contents of any of the formulæ. No one except West, the vendor, had any knowledge concerning the same.

On December 23, 1927, appellee sold the formulæ to its president for $1, and shortly thereafter the deposit box was opened and the documents removed and delivered to the purchaser. Previously, in 1920, at a special meeting, the board of directors had adopted the following resolution: "Upon motion the one thousand shares of stock issued to P. A. West, in lieu for alleged valuable formulæ and which were later found to be of no value to this company, was also ordered to be placed in the hands of our attorneys in hopes of having said stock or its equivalent in money or other property refunded to the Treasury of our Company." On March 31, 1920, appellee wrote down its capital investment account from $391,270 to $137,710. In other words, it reduced upon its books its capital account in the sum of $253,560, a part of which was the $100,000 paid to West for the formulæ. However, the transaction apparently was not then considered closed, for in 1927, in making its report, appellee deducted the difference between the cost and selling price of the formulæ, saying that it had not previously made the deduction because the transaction had not been fully or completely closed in the manner required by the regulations of the Treasury Department, in order to justify a deduction.

█ It is insisted by appellant that charging off on the books the amount paid for the formulæ in 1920 completed the ascertainment of the amount of loss thereon. We prefer the conclusion of the District Court, who said: "If this taxpayer had in 1920 or any subsequent year before the actual sale attempted to take credit for this loss it would not have been allowed. * * * No one knew, and no one at the present writing knows, at least it does not appear in evidence, whether or not these formulæ have any value. The only way to determine that was to sell them. This

the company did, and I am therefore of the opinion that they were entitled to credit."

It is clear that no one in the corporation knew at any time prior to 1927, whether its formulæ were in fact of any financial value or not. True, there was a charge-off made in 1920, but the corporation did not know what was in the formulæ and could not know, therefore, their value. True, this matter was discussed at a directors' meeting, but the language of the resolution, though not of the clearest form, discloses clearly that the directors were then hoping that they would be able to salvage something from the investment. They said that the formulæ were of no value to the company, but directed that the entire matter be placed in the hands of attorneys, with direction to bring about cancellation of the stock issued for the formulæ or reimbursement in money or other property. Clearly, the matter was not closed in 1920, but was open until concluded in 1927 when the sale was made. Prima facie, this sale and delivery established the amount of the loss. The government having rebutted in no way this showing, the District Court was justified in finding in favor of appellee.

█ It is well settled that losses properly deductible from net income must be realized and completed by some identifiable event; that among such events, the most commonly occurring is sale of property, and that if a sale is real and an isolated transaction, it is ordinarily conclusive proof of loss. It is only when the sale is not in good faith or is part of some plan which necessarily implies an intended evasion of the law that the sale does not fix the loss. Shoenberg v. Commissioner (C.C.A.) 77 F. (2d) 446; United States v. S. S. White Dental Co., 274 U.S. 398, 47 S.Ct. 598, 71 L. Ed. 1120. Whether a deduction is justified is not solely a question of whether certain book entries have been made, but whether a bona fide disposition has been completed, such as the abandonment, sale or other definitely ascertained loss of assets to the corporation. Doyle v. Mitchell Bros. Co. (C.C.A.) 235 F. 686, L.R.A. 1917E, 568; Southern Pacific R. Co. v. Muenter (C.C.A.) 260 F. 837.

It is said that the sale was not one made in good faith, but we find in the stipulated facts no evidence impeaching its propriety.

The judgment is affirmed.