Robert Boehm and Frances Boehm, Petitioners *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 52348. Filed May 22, 1957.

*Rubin H. Marcus, Esq.*, for the petitioners.
*Theodore E. Davis, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* All of the facts have been stipulated. The stipulation is adopted as our findings of fact. The facts are as follows.

Robert Boehm and his wife, Frances, who is referred to hereinafter as the petitioner, filed a joint return for the taxable year 1948 with the collector of internal revenue for the second district of New York.

Petitioner's mother-in-law is Lillian Boehm; her father-in-law is Louis Boehm; and her sister-in-law is Lucille White. In 1948, as is set forth hereinafter, petitioner engaged in cash transactions with each of the above three individuals. Also involved under the issue to be decided are three corporations which were wholly owned by petitioner in 1948, namely, Orange Realty Corporation, New Brunswick Realty Corporation, and 414–418 George Street Corporation.

Petitioner owned 500 shares of stock of West Penn Electric Co., which she bought on October 2, 1947, for $8,853.20; and 610 shares of stock of New York Water Service Co., which she bought on December 9, 1947, and February 6, 1948, at a total cost of $34,277.69. Petitioner disposed of all of these shares of stock in 1948 in the following way:

On April 16, 1948, petitioner transferred 500 shares of stock of West Penn Electric Co. to Lillian Boehm who paid petitioner, by check, $7,687.50, the then market price.

On May 20, 1948, petitioner transferred 610 shares of stock of New York Water Service Co. to Louis Boehm who paid petitioner, by check, $24,171.25, the then market price.

With respect to the checks used in these transactions, it is agreed that the checks of Lillian Boehm and Louis Boehm were drawn on their respective individual bank accounts and that petitioner deposited those checks in her individual bank account.

All of the shares of stock of the two corporations above named found their way soon afterward into the hands of petitioner's wholly owned corporations in the following way:

On May 14, 1948, Lillian Boehm sold the 500 shares of stock of West Penn Electric Co. to Orange Realty Corporation for the same

price which she had paid to petitioner, $7,687.50, for which Orange Realty gave Lillian Boehm its check which she deposited in her bank account. On May 14, 1948, the market value of the West Penn Electric Co. stock was $9,147.50.

On May 20, 1948, the same day on which petitioner transferred the 610 shares of stock of New York Water Service Co. to her father-in-law, Louis Boehm, Lucille White, her sister-in-law, sold 300 shares of stock of New York Water Service Co. to New Brunswick Realty, and 310 shares of the same stock to 414–418 George Street Corporation for $11,887.50, and $12,283.75, respectively, or a total sum of $24,171.25, for which each corporation gave its check to Lucille White, and she deposited the checks in her bank account. That is to say, Lucille White received the same amount as Louis Boehm paid petitioner for the 610 shares of stock of New York Water Service Co.

The petitioner, in the joint return for 1948, reported the sale of the 500 shares of West Penn Electric Co. stock as a sale resulting in a short-term capital loss of $1,205.70; and she reported the sale of 610 shares of stock of New York Water Service Co. as a sale resulting in a short-term capital loss of $10,106.44. The Commissioner disallowed both deductions. In the statement attached to the statutory deficiency notice, he did not state his reasons for disallowing the deductions.

The question is whether no loss deductions are allowable to the petitioner, Frances Boehm, with respect to her transfers of two blocks of stocks because of the provisions of section 24 (b) of the 1939 Code.[1]

The respondent contends that Frances Boehm *indirectly* made sales of the stocks to her wholly owned corporations, Orange Realty, New Brunswick Realty, and 414–418 George Street Corporation, by means of transfers of the stocks to her mother-in-law and her father-in-law, and, therefore, deductions of losses by her are prohibited by the provisions of section 24 (b) (1) (B).

Petitioner contends that she made sales of the stocks to persons who are not within the class defined by section 24 (b) (2) (D), namely, her mother-in-law and her father-in-law, so that her deductions of

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

(A) Between members of a family, as defined in paragraph (2) (D) ;

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual ;

*   *   *   *   *   *   *

(2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

*   *   *   *   *   *   *

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants ; * * *

losses are not barred by the provisions of section 24 (b) (1) (A). It is petitioner's position that her transactions with her mother-in-law and father-in-law were completed transactions for which she received fair consideration, and that, therefore, they are not reached by the statutory provision upon which the respondent relies, namely, section 24 (b) (1) (B).

We cannot agree with petitioner's contentions. "Section 24 (b) states an absolute prohibition—not a presumption—against the allowance of losses on any sales between the members of certain designated groups." *McWilliams* v. *Commissioner*, 331 U. S. 694. The legislative intention in enacting the provisions of section 24 (b) was to close the loophole of tax avoidance represented by "the practice of creating losses through transactions between members of a family and close corporation," [2] which practice also has been described as "the artificial taking and establishment of losses where property was shuffled back and forth between various legal entities owned by the same persons or person." [3]

Petitioner was able to make transfers of the stocks in question *indirectly* to each of three corporations which she wholly owned and controlled. The situation was one in which, due to friendly control through persons who were by marriage closely associated with petitioner, and who were willing to lend their assistance to petitioner, at no loss or inconvenience to themselves, petitioner was able to create short-term capital losses from securities transactions which did not result, however, in any "economically genuine realizations of losses" to herself. *McWilliams* v. *Commissioner, supra.* The blocks of stock of West Penn Electric Co. and of New York Water Service Co. passed from Frances Boehm to her wholly owned corporations which, although distinct legal entities, had an economic identity with Frances Boehm because she owned them completely. In the light of the realities of economic interests, those three corporations were her *alter ego, Higgins* v. *Smith*, 308 U. S. 473.

In enacting section 24 (b) of the 1939 Code, the Congress struck out losses from sales of property made through certain specified transactions, whether made *directly or indirectly*, and one of the proscribed transactions was a sale between an individual and a corporation more than 50 per cent of the outstanding stock of which was owned by such person. Petitioner cannot avoid the prohibition contained in section 24 (b) (1) (B) by resorting to other parts of section 24 (b), namely, the definition contained in subsection (2) (D), under the facts surrounding her transactions. Neither can she succeed in avoiding the

---

[2] H. Rept. No. 704, 73d Cong., 2d Sess., p. 23 (1939–1 C. B. (Part 2) 554, 571) ; S. Rept. No. 558, 73d Cong., 2d Sess., p. 27 (1939–1 C. B. (Part 2) 586, 607).

[3] H. Rept. No. 1546, 75th Cong., 1st Sess., p. 28 (1939–1 C. B. (Part 2) 704, 724).

reach of section 24 (b) (1) (B) by invoking the provisions of section 24 (b) (1) (A) together with the definition contained in (2) (D). To countenance such effort to play one provision of section 24 (b) against other provisions of the same section not only would defeat the intendment of section 24 (b) as a whole, but also would be in violation of the specific wording of the general clause contained in (b) (1) which states that no deductions shall *in any case* be allowed in respect of losses from *direct or indirect* sales or exchanges of property.

In considering the applicability of section 24 (b) to the facts of this case, it is proper and necessary to take into account each step of what transpired, to consider the several steps as part of single dealings of petitioner with her own property, and to scrutinize the whole of each plan from its beginning to its ending. Petitioner, despite the steps which were taken, did not part with control over each block of stock; her economic wealth was not in fact reduced; she did no more than bring about a shifting of cash from each one of her three wholly owned corporations to her own pocket, and a relocation of her securities from her hands to her incorporated depositories. Therefore, her purported losses were wholly illusory ones.

Prior to the enactment of section 24 (b) of the 1939 Code, the courts had to consider without the aid of such statutory provision a great variety of transactions representing the continuing contest between taxpayers, who sought to reduce taxes, and the Government. As was observed in *McWilliams* v. *Commissioner*, *supra*, "Securities transactions have been the most common vehicle for the creation of intra-family losses." Without such specific statutory provisions as are embodied in section 24 (b), a plug for tax statute loopholes, the courts developed and applied rules of construction of the basic provisions of the Internal Revenue Code, and its predecessor revenue acts. The enactment of section 24 (b) ought to be sufficient statutory authority to make clear the transactions which give rise to deductible loss from a sale or exchange of property, and we should not find it necessary to go back to the authority of many decisions dealing with the problem presented here. It is sufficient to recall what was said in *Shoenberg* v. *Commissioner*, 77 F. 2d 446, 449, certiorari denied 296 U. S. 586, as follows:

A loss as to particular property is usually realized by a sale thereof for less than it cost. However, where such sale is made as part of a plan whereby substantially identical property is to be reacquired and that plan is carried out, the realization of loss is not genuine and substantial; it is not real. This is true because the taxpayer has not actually changed his position and is no poorer than before the sale. The particular sale may be real, but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities, and no loss is deductible which is not real.

412

The arrangements of petitioner respecting her two blocks of stock were no more than an attempt to choose a time for realizing tax losses on her investments which, in reality, were continued without interruption. *McWilliams* v. *Commissioner, supra.*

Under all of the facts and circumstances, the issue here cannot be resolved by treating the sales by petitioner to her mother-in-law and to her father-in-law as conclusive. The issue is not limited to or restricted by those transactions. It is held that the provisions of subsection (2) (D), considered with those of section 24 (b) (1) (A), are not relevant or material to the issue, and are not applicable to the question before us. It is held, further, that the provisions of section 24 (b) (1) (B) apply, and, therefore, that no loss deductions with respect to petitioner's sales of her securities are allowable.

*Decision will be entered for the respondent.*