**David W. KEATS, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 88–1007.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1988.

Decided Nov. 8, 1988.

Allan W. Ben (argued), Birmingham, Mich., for plaintiff-appellant.

Gary R. Allen, Chief Appellate Section Tax Div. Dept. of Justice Washington, D.C., Geneva S. Halliday, Asst. U.S. Atty., U.S. Attorney Detroit, Mich., Ronald F. Fischer, Kenneth L. Greene (argued) Richard Farber, Tax Div., Department of Justice Washington, D.C., for defendant-appellee.

Before KEITH, JONES and MILBURN, Circuit Judges.

PER CURIAM.

The plaintiff-appellant appeals from the district court's summary judgment order which disallowed his claims for tax refunds, 695 F.Supp. 353. The district court agreed with the Commissioner's conclusion that the plaintiff-appellant's commodity option straddle transactions were "shams" wholly lacking non-tax economic substance. Because we conclude that there was no genuine, material factual issue in this case, and that the Commissioner was entitled to judgment as a matter of law, we affirm the district court's judgment.

## I.

In 1975 and 1976, the plaintiff-appellant, David W. Keats, conducted three balanced straddle transactions in silver options on the London market through two London brokers. The 1975 transaction was conducted through Rudolph Wolff and Co. ("Wolff") and the two 1976 transactions were conducted through Competex, S.A. ("Competex"). Because the transactions at issue were subject to the rules of the London Metal Exchange, the transactions were executed on a "principal to principal" basis. Thus, when Keats purchased or sold option contracts through Wolff and Competex, he effectively purchased the contracts from or

sold the contracts to the broker, as opposed to some third party.

Although the mechanics of these transactions are rather complex, it is undisputed that Keats neither gained nor lost *any* capital in the transactions. Rather, in all three of the transactions, the net "premium" which Keats paid the broker to execute one "leg" of the straddle was exactly offset by the net premium that he received from the broker upon closing the other leg of the straddle. Therefore, the only "out-of-pocket" expenses incurred by Keats were the commissions that he paid the brokers to arrange the trades.

The manner in which Keats reported the 1975 and 1976 straddle transactions on his federal income tax returns substantially reduced his reported taxable income for those two years. For example, while Keats reported the losses from his straddles as ordinary losses (which offset ordinary income), he reported the gains from the straddles as capital gains. Because Keats possessed offsetting capital losses from unrelated transactions in both the 1975 and 1976 tax years, the reported gains produced no increase in his federal income tax liability. Thus, although the net gains and losses reported from Keats's straddles differed only in the amount of the brokers' commissions (approximately $6,775.00 in total), the 1975 transaction lowered his reported taxable income for that year from $82,735.00 to $29,650.00, while the 1976 trades reduced his reported taxable income for that year from $99,813.02 to $39,564.04.

In 1982, the Commissioner of the Internal Revenue Service ("IRS") concluded that Keats's transactions were shams wholly lacking non-tax economic substance; therefore, the IRS re-computed his tax liability for 1975 and 1976 without considering the trades. On December 3, 1982, the IRS assessed a deficiency against Keats for the 1975 tax year in the amount of $25,577.00 plus accumulated interest of $16,716.33 for a total of $42,293.33. On the same date, the IRS assessed a deficiency against Keats for the 1976 tax year of $30,255.30 plus accumulated interest of $17,656.10 for a total of $47,911.49. Keats promptly paid

the IRS the full amounts of the deficiencies assessed against him and filed claims for refunds. The refund claims were disallowed by the IRS on September 16, 1983.

On February 13, 1984, Keats filed his complaint against the United States ("Government") in the United States District Court for the Eastern District of Michigan. In his complaint, Keats alleged that he overpaid his federal income tax liability for 1975 and 1976 as a result of the deficiencies assessed against him by the IRS. He sought a refund of $90,204.82 ($42,293.33 + 47,911.49) plus interest, and reimbursement of his expenses incurred in seeking the refunds. In February of 1987, the Government filed its motion for summary judgment, arguing that Keat's transactions were shams wholly lacking non-tax economic substance. Keats filed his "answer" to the Government's motion on March 27, 1987, arguing that he possessed a non-tax profit motive for entering into the relevant transactions. Both the Government and Keats submitted affidavits from experts in commodities transactions in support of their respective positions.

On October 29, 1987, United States District Judge Avern Cohn issued a memorandum opinion granting the Government's motion and dismissing Keats's complaint. Relying on *Glass v. Commissioner*, 87 T.C. 1087 (1987), and *Mahoney v. Commissioner*, 808 F.2d 1219 (6th Cir.1987), the district court stated that:

> What plaintiff did was enter into paired transactions a short time apart on which he neither made, nor lost, money even though the transactions generated ordinary losses and short-term capital gains for tax purposes. There was no economic substance to these transactions; plaintiff did no more than trade dollars. Plaintiff's only out-of-pocket expenditures were the commissions which he paid brokers for effectuating the transactions. Congress certainly intended something more before allowing diminished payment of income taxes.

J.App. at 269–70.

Keats then brought a timely appeal to this court.

## II.

The parties have thoroughly briefed the issue of what constitutes the proper test, under the Internal Revenue Code, for determining whether a straddle transaction has been entered into for profit. However, because we find that there was no genuine issue of material fact as to whether Keats's transactions were shams, we need not address the separate statutory issue.

■ It is settled law that loss deductions that arise out of transactions lacking non-tax economic substance may be disallowed by the IRS, even though the transactions satisfy the formal deductibility requirements of the Internal Revenue Code. This was first recognized in *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), where the Supreme Court stated that "the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." *Id.* at 469, 55 S.Ct. at 267. In *Davis v. Commissioner*, 585 F.2d 807 (6th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979), this court further explained that:

> What tax statutes do not intend is that taxpayers cast transactions in forms so as to come within their provisions when in fact there is no substance behind the use of the forms, when the transaction is but a sham, or when the economic reality of the transaction does not comport with the form.

*Id.* at 811–12. *Accord Owens v. Commissioner*, 568 F.2d 1233 (6th Cir.1977). Thus, our decisions make clear (1) that claimed deductions may properly be disallowed by the IRS even though the relevant transactions actually occurred as represented by the taxpayer, and (2) that non-tax economic substance must inhere in the relevant transactions before loss deductions will be allowed.

■ Upon reviewing the record in this case, we find that the district court correctly concluded that there was no genuine, material factual issue in this case, and that the Government was entitled to judgment as a matter of law. Keats admits that the premiums which he paid the brokers were *exactly* offset by the premiums which the brokers paid him. In addition, he admits that the only out-of-pocket expenses that he incurred with respect to the straddle transactions were the commissions which he paid the brokers to effectuate the trades. Although Keats has produced affidavits which state that he possessed a profit motive for entering into the transactions, those affidavits do not explain the curious symmetry of the premiums paid and received by Keats. Moreover, given the detailed countervailing evidence put forth by the Government, Keats simply has not produced sufficient evidence to carry his burden of production under Fed.R.Civ.P. 56(e). Therefore, we hold that the district court properly granted summary judgment in favor of the Government. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## III.

For the foregoing reasons, the district court's judgment is hereby AFFIRMED.