**COTTAGE SAVINGS ASSOCIATION,**
Petitioner–Appellee,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent–Appellant.**

No. 89–1036.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1989.

Decided Dec. 4, 1989.

Dennis L. Manes (argued), Scott M. Slo-
vin, Schwartz, Manes & Ruby, Cincinnati,
Ohio, for petitioner-appellee.

Peter K. Scott, I.R.S., Gary R. Allen,
Acting Chief, William S. Rose, Richard Far-
ber, Bruce R. Ellisen (argued), U.S. Dept.
of Justice, Appellate Section Tax Div.,
Washington, D.C., for respondent-appel-
lant.

Before WELLFORD and NORRIS,
Circuit Judges, and LIVELY, Senior
Circuit Judge.

LIVELY, Senior Circuit Judge.

This appeal requires us to decide wheth-
er a savings association is entitled to a loss
deduction under the Internal Revenue
Code [1] as a result of "reciprocal sales" of
depreciated mortgage loans to other thrift
institutions. The Commissioner of Internal
Revenue disallowed the deductions and as-
serted deficiencies in corporate income tax
for the years 1974 through 1980. Upon
petition for redetermination of deficiencies,
the Tax Court found that the petitioner,
Cottage Savings Association, realized loss-
es in the years under review and that the
losses are recognized and deductible for
income tax purposes. The Commissioner
appeals, and we reverse.

I.

A.

One of the problems experienced by
thrift institutions in recent years resulted

---

1. As used in this opinion, "the Code" refers to the Internal Revenue Code of 1954, as amended.

from their historic practice of making long term mortgage loans at fixed interest rates. As interest rates rose in the late 1970s such institutions were caught in a cash squeeze. Their return from loans was low, but the current market required them to pay interest at higher and higher rates in order to attract new deposits. In addition, many savings institutions lost substantial amounts of deposits to higher-yielding money market funds and similar investment vehicles. Even though Cottage began offering adjustable rate mortgages in 1980, in common with other similar institutions, it continued to experience a drop in new loans and deposits.

The practice of generating losses by means of "reciprocal sales" resulted from a change in accounting requirements promulgated in 1980 by the Federal Home Loan Bank Board (FHLBB) as "Memorandum R–49." Prior to the issuance of R–49, the FHLBB's regulatory accounting principles required institutions to reduce their net worth by the amounts of any losses sustained in the sale of loans at less than book value. Under R–49, the institutions no longer were required to record such losses. By observing R–49's criteria, savings associations attempted to generate income tax refunds by entering into "reciprocal sales" transactions that produced deductible losses without impairing net worth. Based on "reciprocal sales" transactions with four other Ohio savings institutions on December 31, 1980, Cottage claimed losses on its 1980 corporate income tax return from sales of mortgage loans at less than book value. However, under R–49 it recorded no losses for accounting purposes. The resulting income tax refunds claimed for 1980 and carry-back years exceeded $677,000.

## B.

R–49 lists ten criteria, all of which must be satisfied, for mortgage loans involved in reciprocal sales to be considered "substantially identical," and thus to qualify for special treatment. The sales must:

1. involve single-family residential mortgages,

2. be of similar type (e.g., conventionals for conventionals),

3. have the same stated terms of maturity (e.g., 30 years),

4. have identical stated interest rates,

5. have similar seasoning (i.e., remaining terms of maturity),

6. have aggregate principal amounts within the lesser of 2½% or $100,000 (plus or minus) on both sides of the transaction, with any additional consideration being paid in cash,

7. be sold without recourse,

8. have similar fair market values,

9. have similar loan-to-value ratios at the time of the reciprocal sale, and

10. have all security properties for both sides of the transaction in the same state.

All of the mortgage loans involved in Cottage's December 31, 1980, transactions satisfied the R–49 requirements. These transactions consisted of the sale of 252 loans to the four reciprocating institutions and the purchase of 305 loans from the same associations. The institutions exchanged checks on December 31, with the purchaser paying the seller in each instance a discounted price for the loans, reflecting the difference between the then-current interest rate (14.863 percent) and the rates at which the loans had been made. The institutions did not actually sell whole loans; instead, they sold "90 percent participations" in each loan, with the seller retaining a 10 percent interest in each loan. The original lender continued to service the loans, with the borrowers making payments to that institution. Payments were then remitted to the purchasing association. It was stipulated that Cottage did not investigate the credit ratings of any of the borrowers on the loans it received in the transactions and did not inspect the real estate that secured the loans. The recording and tax treatment of the transactions were based on the single premise that the package of mortgage loans sold and purchased satisfied the criteria of R–49.

## II.

### A.

The government makes two basic arguments on appeal. First, it argues that the "reciprocal sales" were actually exchanges and that they did not satisfy the Code requirements for realization of loss upon the exchange of property. The government maintains that the Code and applicable Treasury Regulations treat a loss as realized only if the property exchanged is materially different. Since R–49 requires that the loans which are the subject of "reciprocal sales" be "substantially identical," they necessarily are not materially different.

Second, unless the "materially different" requirement is met, although a loss is "realized" in a reciprocal sales transaction, it is not deductible as a loss "sustained." No loss is sustained for income tax purposes if a transaction resulting in loss lacks economic substance. Since Cottage merely exchanged one pool of mortgage loans whose market value had fallen below their book value for a similar pool of loans, matched exactly as to interest rates and maturity dates, and reflected no loss for accounting purposes, there was no economic substance to the transaction.

### B.

Cottage agrees that "realization" is the key issue in determining whether it is entitled to a loss deduction. According to Cottage, transfer of the mortgage loans resulted in a realized loss regardless of whether the mortgage loans transferred and received materially differed from each other. While conceding that mere increase or decrease in the value of a taxpayer's property does not result in income or loss, Cottage contends that it is different when the increase or decrease is "realized" in a completed transaction. When it results from an exchange rather than from a sale, a loss is realized, regardless of whether the properties exchanged are materially different.

While denying the existence of such a requirement, Cottage maintains that if exchanged properties must be materially different for a loss to be realized, that requirement was met in the December 31, 1989, transaction. The exchanged mortgages had different obligors and were secured by different parcels of real estate. They met R–49's "substantially identical" criteria respecting interest rates, maturities and similar features, but were nonetheless materially different because the presence of different obligors and different security meant that there were different risk factors.

Cottage argues that any realized loss is recognized for income tax purposes unless it falls within a statutory exception, and the "reciprocal sales" transactions do not fall within an exception.

Finally, Cottage argues that the transactions had economic substance. The mortgages had already suffered a decline in market value and this decline was converted into a realized loss by the transfer of the mortgages to a third party in a completed transaction. The fact that Cottage simultaneously purchased mortgage loans that satisfied the R–49 criteria from the transferees is irrelevant; the loss was realized, and it was recognized and deductible.

## III.

### A.

The Tax Court concluded that the transactions between Cottage and the four associations were exchanges, and that properties exchanged must be materially different for a loss to be deductible. *Cottage Savings Association v. Commissioner,* 90 T.C. 372 (1988). A majority of the Tax Court applied Code section 1001(a) and Treas.Reg. 1.1001–1(a) in reaching this conclusion. Code section 1001 provides:

§ 1001. Determination of amount of and recognition of gain or loss

(a) Computation of gain or loss

The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis pro-

vided in such section for determining loss over the amount realized.

26 U.S.C. § 1001(a).

The Tax Court also relied upon the opening sentence in Treas.Reg. 1.1001–1(a):

§ 1.1001–1 Computation of gain or loss. (a) *General rule.* Except as otherwise provided in Subtitle A of the Code, the gain or loss realized from the conversion of property into cash, or from the exchange of property for other property differing materially either in kind or in extent, is treated as income or as loss sustained.

26 C.F.R. 1.1001–1(a). The remainder of subsection (a) deals exclusively with computation. Based on its conclusion that an exchange of properties produces a realized loss only if the properties are materially different and its determination that the mortgage loans involved in the December 31, 1980, transactions satisfied this requirement, the Tax Court majority held that Cottage's 1980 loss was recognizable and deductible.

Judge Cohen, joined by four other members of the Tax Court, concurred in the decision in *Cottage,* but reached her conclusion on a different basis. 90 T.C. at 403–04. She viewed Treas.Reg. 1.1001–1(a) as dealing with the computation of gain or loss rather than establishing a rule for determining whether gain or loss has been realized or recognized. Therefore, the reference in Treas.Reg. 1.1001–1(a) to "property differing materially either in kind or in extent" cannot be treated as creating a requirement for realization or recognition.

In her view, § 1001(c) controls the determination of whether gain or loss is recognized. That section provides:

(c) Recognition of gain or loss

Except as otherwise provided in this subtitle, the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized.

26 U.S.C. § 1001(c). Finding no provision to the contrary, Judge Cohen concluded that the exchange of pools of mortgage loans was an identifiable event that fixed the amount of loss, which § 1001(c) requires to be recognized.

B.

The Tax Court has applied the *Cottage* majority's reasoning in allowing the deduction of losses arising from "reciprocal sales" in subsequent cases. See *Federal National Mortgage Association v. Commissioner,* 90 T.C. 405 (1988), decided the same day as *Cottage; San Antonio Savings Association v. Commissioner,* 55 T.C.M. (CCH) 813 (1988); *Leader Federal Savings and Loan Association of Memphis v. Commissioner,* 57 T.C.M. (CCH) 846 (1989).

Two district courts in Texas have taken different approaches to the issue and have reached opposite conclusions. In *Centennial Savings Bank FSB v. United States,* 682 F.Supp. 1389 (N.D.Tex.1988), the court concluded that Treas.Reg. 1.1001–1(a) applied to a "reciprocal sale" transaction and interpreted the regulation as requiring that properties exchanged in the transaction be materially different before a loss will be realized. *Id.* at 1398. The court found, however, that mortgage loans matched under R–49 did not differ materially and disallowed the deduction. Since Centenial did not consider individual differences in mortgage loans and the market place treated the mortgage pools alike, the individual differences lacked "economic relevance." *Id.* at 1399.

The district court also held that Centennial did not experience a real change in economic condition by reason of its R–49 transactions. Although its mortgages had declined in value, after the R–49 transaction, Centennial was no poorer than before. There had been no event that made the taxpayer "poorer to the extent of the loss claimed." *Id.* at 1400, quoting *Shoenberg v. Commissioner of Internal Revenue,* 77 F.2d 446, 449 (8th Cir.), *cert. denied,* 296 U.S. 586, 56 S.Ct. 101, 80 L.Ed. 414 (1935). The loss was suffered as current interest rates drove down the market value of Centennial's mortgage loans; it did not occur when the discounted mortgage loans were

exchanged with other associations for similar mortgage loans.

Reaching a different conclusion, the court allowed a loss deduction in *First Federal Savings and Loan Association of Temple v. United States*, 694 F.Supp. 230 (W.D.Tex.1988). The court found that an R–49 transaction in which Temple transferred 360 mortgage loans to a Waco association and acquired 287 loans from that association was an exchange, even though structured as a "reciprocal sale." The exchange involved two pools of mortgage loans rather than individual loans. *Id.* at 236. The court found that Temple realized a loss under § 1001 because the transaction was an identifiable event that fixed the decline in value of the mortgages transferred. The decline in value was fixed as of the time of the R–49 transaction and it was immaterial that the taxpayer was in no worse economic position after the transfer than before. *Id.* at 239–42. The court found that the mortgages involved were not materially different, *id.* at 244, but concluded that this fact did not prevent the exchange from producing a realized loss. *Id.* at 242, 249.

The *Temple* court did not stop with its analysis of the realization requirement. It stated that recognition, not realization, was the critical issue. *Id.* at 232 n. 2. It noted that § 1001(c) requires recognition of any gain or loss determined under § 1001(a) and (b) in the absence of a provision to the contrary. Treas.Reg. 1.1002–1 provides for strict construction of exceptions to the general rule requiring recognition of all gains and losses. There is no exception concerning nonrecognition of gains or losses from an exchange of loans, notes, or evidences of indebtedness. *Id.* at 247. Since no contrary provision applies to exchanges of mortgage loans, § 1001(c) is dispositive. *Id.* at 246.

*Federal National Mortgage Association v. Commissioner* is on appeal to the Court of Appeals for the District of Columbia and the two Texas cases have been appealed to the Fifth Circuit Court of Appeals. Neither court has rendered a decision at the time of preparation of this opinion.

## IV.

### A.

■ Our approach to this case differs from that of the other courts that have considered the issue. We agree with Judge Cohen that § 1001(a) deals only with the computation of the amount of gain or loss, not whether a gain or loss is realized. Further, it does not prescribe a rule for determining whether a gain or loss will be recognized. That determination is controlled by § 1001(c), the recognition provision. In our view, the inquiry does not stop with a determination that a loss is recognizable; it must also be deductible under § 165, which deals comprehensively with the income tax treatment of losses. Section 165(a) provides:

> **(a) General Rule.** There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

26 U.S.C. § 165(a). Read together, §§ 1001(c) and 165(a) appear to provide that any recognizable loss sustained during a taxable year is deductible unless otherwise compensated. The nature of the loss allowed is set forth in Treas.Reg. 1.165–1(b):

> (b) *Nature of loss allowable.* To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except as otherwise provided in section 165(h) and § 1.165–11, relating to disaster losses, actually sustained during the taxable year. Only a bona fide loss is allowable. Substance, and not mere form shall govern in determining a deductible loss.

26 C.F.R. § 1.165–1(b).

■ We believe the loss in this case was technically realized in the sense that an earlier decline in value of the fixed-rate mortgage loans was fixed by an identifiable event—the "reciprocal sales" transaction. Since there is no Code exception that applies, under § 1001(c) the loss must be recognized. The remaining question is whether an actual loss was sustained for

income tax purposes so as to be deductible under § 165.

### B.

It is clear that a taxpayer's motive in entering into a transaction resulting in a loss does not control deductibility. A taxpayer may reduce the amount of tax otherwise due, or avoid it altogether, "by [any] means which the law permits." *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). What is done for the purpose of tax avoidance must, however, have some business purpose and not be an economic transaction in form only. The courts will not "exalt artifice above reality." *Id.* at 470, 55 S.Ct. at 270.

Shortly after the Supreme Court decided *Gregory*, the Eighth Circuit Court of Appeals applied the teachings of *Gregory* in a case involving the sale and purchase of corporate stocks. In *Shoenberg v. Commissioner of Internal Revenue*, 77 F.2d 446 (8th Cir.), *cert. denied*, 296 U.S. 586, 56 S.Ct. 101, 80 L.Ed. 414 (1935), the taxpayer devised a plan involving related but separate transactions in order to avoid the "wash sale" provision of the Code. Under § 1091, a loss on the sale of shares of stock or other securities may not be deducted where the seller acquires substantially identical stock or securities within 30 days before or after the sale. 26 U.S.C. § 1091. The purpose of this provision is to prevent deductions for fictitious losses and to require that there be a change in the economic position of the taxpayer. *Hanlin v. Commissioner of Internal Revenue*, 108 F.2d 429, 430 (3d Cir.1939).

The taxpayer in *Shoenberg* sold individually owned corporate stocks through a broker on December 5, 1930. The same day the broker purchased equal shares of the identical stocks for the same prices in the name of an investment company controlled by the taxpayer. Slightly more than 30 days thereafter the taxpayer purchased the stocks from the investment company at the current market price, slightly below the price at which he had sold them through the broker. The taxpayer claimed a loss on his 1930 income tax return based on the December 5 sale of the stocks at prices below his tax basis. The court agreed with the taxpayer that there was an actual sale. This satisfied the requirement that the loss be "realized" by some completed "identifiable event." *Id.* at 448. However, the court concluded that it could look beyond the form to the substance of the entire transaction. In denying the deduction, the court stated:

> To secure a deduction, the statute requires that an actual loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed; in other words, he has that much less than before.
>
> A loss as to particular property is usually realized by a sale thereof for less than it cost. However, where such sale is made as part of a plan whereby substantially identical property is to be reacquired and that plan is carried out, the realization of loss is not genuine and substantial; it is not real. This is true because the taxpayer has not actually changed his position and is no poorer than before the sale. The particular sale may be real, but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities, and no loss is deductible which is not real.

*Id.* at 449.

The Tax Court employed similar reasoning in *Horne v. Commissioner of Internal Revenue*, 5 T.C. 250 (1945). Although the property sold and bought—a seat on a commodities exchange—was not covered by the "wash sale" provision of the Code, the court disallowed a claimed deduction. The court stated:

> Underlying all of the loss deduction provisions of the statute is the concept of a financial detriment actually suffered by the taxpayer. Before any deduction is allowable there must have occurred some transaction which when fully consummated left the taxpayer poorer in a material sense.

*Id.* at 254.

In determining the tax consequences of a transaction, this court considers substance

854

over form and examines the total context of the transaction. In *Johnson v. Commissioner of Internal Revenue,* 495 F.2d 1079 (6th Cir.), *cert. denied,* 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 317 (1974), the taxpayers were held liable for capital gain taxes as the result of a series of transactions. The taxpayers transferred appreciated but encumbered stocks to a trust, which in turn assumed the debt secured by the stocks. After noting that tax liability is determined by the substance rather than the form of a transaction, the court stated:

> When one overall transaction transferring property is carried out through a series of closely related steps, courts have looked to the essential nature of the transaction rather than to each separate step to determine tax consequences of the transfer.

*Id.* at 1082.

This court has consistently disallowed loss deductions based on transactions in which the taxpayer's economic position was not changed for the worse. In *Owens v. Commissioner of Internal Revenue,* 568 F.2d 1233 (6th Cir.1977), Judge Peck wrote for the court:

> What the law does not permit a taxpayer to do in seeking to avoid taxes is to cast transactions in forms when there is no economic reality behind the use of the forms. "The incidence of taxation depends upon the substance of a transaction.... To permit the true nature of a transaction to be disguised by mere formalism, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." *Commissioner of Internal Revenue v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945). See *Gregory v. Helvering, supra,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; *Union Planters National Bank v. United States,* 426 F.2d 115, 117 (6th Cir.), *cert. denied,* 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970).

*Id.* at 1237. Judge Peck further bolstered his conclusion that an attempted pass-through of deductions generated by a "Subchapter S" corporation did not produce

deductible losses for the taxpayer by quoting one of Judge Learned Hand's trenchant dissents:

> "The Income Tax imposes liabilities upon taxpayers based upon their financial transactions, and it is of course true that the payment of the tax is itself a financial transaction. If, however, the taxpayer enters into a transaction that does not appreciably affect his beneficial interest except to reduce his tax, the law will disregard it; for *we cannot suppose that it was part of the purpose of the act to provide an escape from the liabilities that it sought to impose.*" (Emphasis supplied.)
> *Gilbert v. Commissioner of Internal Revenue,* 248 F.2d 399, 410, 411 (2d Cir. 1957) (Hand, J., dissenting.).

*Id.* at 1240.

The court reached the same result in *Davis v. Commissioner of Internal Revenue,* 585 F.2d 807 (6th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979), where a transaction that appeared to produce realized losses was found to be a sham. More recently this court agreed with the Commissioner that a series of "straddle" transactions in silver from which a taxpayer claimed losses were shams. The loss deduction was disallowed because the transactions had no economic substance beyond producing tax losses. *Keats v. United States,* 865 F.2d 86 (6th Cir.1988). Citing *Gregory, Davis,* and *Owens,* the *Keats* court found two settled rules respecting claims for deduction of losses: "(1) that claimed deductions may properly be disallowed by the IRS even though the relevant transactions actually occurred as represented by the taxpayer, and (2) that non-tax economic substance must inhere in the relevant transactions before loss deductions will be allowed." *Id.* at 88.

## CONCLUSION

 We agree with the *Centennial* court that a savings institution is not entitled to deduct losses from the sale of a pool of mortgage loans at prices below book value when the transaction is part of a

"reciprocal sale" under which the institution acquires a pool of substantially identical mortgage loans. We do not agree with *Centennial,* however, that the determining factor is the lack of a material difference in the properties sold and purchased. In form, Cottage's "reciprocal sales" produced an identifiable event that fixed the amount of decline in the value of the mortgage loans that it transferred. Because Cottage received a substantially identical pool of mortgages in exchange, however, and did not record the decline on its books, it was not "poorer to the extent of the loss claimed." *Shoenberg,* 77 F.2d at 449. When the entire transaction is considered, it is clear that Cottage's economic position was not changed by the "reciprocal sales." Under these circumstances, there can be no deduction because no loss has been sustained. A loss is deductible only if specifically authorized by the Code, and § 165 limits deductibility to losses actually sustained.

The petition for review is granted, and the decision of the Tax Court is reversed.